UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-22782-CIV-ALTONAGA/Torres

**DORIS AGATHA MAYLOR**,

    Plaintiff,
v.

**WAL-MART STORES EAST, LP**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Plaintiff, Doris Agatha Maylor's Motion for Spoliation Sanctions [ECF No. 31], filed on May 16, 2023. Defendant, Wal-Mart Stores East, LP, filed a Response [ECF No. 47], to which Plaintiff filed a Reply [ECF No. 57]. The Court has carefully considered the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

**I. BACKGROUND**

This case arises from an incident that occurred at one of Defendant's stores on June 13, 2020. (*See* Index of State Court Docket Entries, Ex. 3, Compl. [ECF No. 11-3] ¶ 7). Plaintiff tripped and fell as the result of a piece of tape or plastic wrapping (the "debris") that had been discarded on an aisle floor of the store. (*See* Mot. 1).[1] The debris is now missing, and Plaintiff accuses Defendant of evidence spoliation. (*See generally id.*).

The parties argue extensively over the exact circumstances of Plaintiff's fall, which was partially captured on the store's surveillance footage. (*See generally* Mot., Ex. 1, Footage [ECF

---

[1] The Court relies on the pagination generated by the Case Management/Electronic Case Files system, which appears in the header on all filings.

No. 31-1]; Notice of Conventional Filing [ECF No. 44]).[2] Suffice it to say that: (1) it appears an unidentified customer dropped the debris on the aisle floor (*see* Footage 5:25:10–12); (2) over the course of the next two minutes, multiple other unidentified customers — and two of Defendant's employees — passed through the area and over the debris (*see id.* 5:25:12–5:27:37);[3] and (3) Plaintiff then walked along the aisle, passed over the debris, and fell (*see id.* 5:27:37–42). Neither side disputes the debris' existence, although Defendant disputes that it was the cause of Plaintiff's injury. (*See* Resp. 5).

After Plaintiff's fall, other customers rushed to the scene, including two who were deposed: Charles Lee and Zandra Randall. (*See* Mot. Ex. 5, Lee Dep. [ECF No. 31-5]; *id.*, Ex. 6, Randall Dep. [ECF No. 31-6]). One of Defendant's employees, Nyron Baker, also arrived at the scene, promptly collected the debris, left the scene, and disposed of the debris. (*See id.* 5:27:45–5:28:24; *see also* Mot. 2; Resp. 2–3). He clocked out of work only a few minutes later, at 5:31 p.m., after having worked a nine-hour shift. (*See* Mot., Ex. 7, Timesheets [ECF No. 31-7] 2). Both Lee and Randall testified that Baker took the debris despite their protestations. (*See* Resp. 2–3 (describing testimony)).

Eventually, store manager Betsaida Ramos arrived and assisted Plaintiff. (*See* Mot. 3; *see generally id.*, Ex. 2, Ramos Dep. [ECF No. 31-2]). Ramos agreed that Baker had quickly picked up the debris and left the scene, but she also remembers that Baker described being yelled at by customers as he walked away. (*See* Ramos Dep. 46:17–47:6). She also noted that the store in question has "pretty rough" customers; this may have been "why he would have been walking

---

[2] The Footage contains a running clock showing the time of day. (*See generally* Footage). When describing and citing the video, both parties refer to the time of day displayed on the video, rather than the video file's internal time stamps. (*See generally* Mot.; Resp.; Reply). The Court does the same. The Footage has no audio.

[3] One customer even appears to kick and move the debris in question. (*See* Footage 5:26:10–15).

away with customers yelling at him." (*Id.* 59:20–60:1). Baker, who was not deposed, has since passed away. (*See* Resp. 9).

Ramos also testified about Defendant's internal procedures regarding employees' responsibility to clean up spills and debris when employees come upon them in the store (*see* Ramos Dep. 12:24–13:13), as well as the responsibility to leave "accident" scenes undisturbed (*id.* 20:17–25). Regarding the latter, Ramos stated that it was policy to not "remove anything that caused the accident[,]" and to take pictures of the incident and area. (*Id.* (alteration added)).[4] Ramos also described Defendant's guidelines on employees' responsibility to secure any evidence or items that were involved in or caused an incident. (*See id.* 22:11–24).

Because the debris is no longer available as evidence, Plaintiff accuses Defendant of spoliation and asks the Court to impose a sanction of either striking Defendant's affirmative defense of comparative negligence or instructing the jury to draw an adverse inference regarding the debris. (*See generally* Mot.).

## II. STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (citation and quotation marks omitted). To show spoliation occurred, Plaintiff must demonstrate: "first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010) (citations and quotation marks omitted). Plaintiff, "as the moving party, has the burden of proof."

---

[4] Plaintiff also claims that these policies are repeated "in numerous sections of Defendant's policies and procedures." (Mot. 3). The policies and procedures have not been filed with the Court.

3

*Id.*

Even if all three elements of spoliation are met, the failure to preserve evidence is only sanctionable upon a showing of bad faith. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009). Put another way, "mere negligence in losing or destroying records" is not enough. *Id.* (citation omitted); *see also Penick v. Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1292 (S.D. Fla. 2020) (explaining that bad faith exists "where a party purposely loses or destroys relevant evidence" (citations and quotation marks omitted)); *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (noting that "bad faith in the context of spoliation[] generally means destruction for the purpose of hiding adverse evidence" (alteration added; citation and quotation marks omitted)).

"If direct evidence of bad faith is unavailable, the moving party may establish bad faith through circumstantial evidence." *Managed Care Sols., Inc.*, 736 F. Supp. 2d at 1322 (citations omitted). Circumstantial evidence of bad faith may be demonstrated when

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Id.* at 1323 (citation omitted).

### III.  DISCUSSION

Plaintiff attempts to show that Defendant is responsible for the spoliation of evidence. (*See* Mot. 5–6). According to Plaintiff, the circumstances here are sufficient because the debris existed at one time, Defendant had a duty to preserve it after it caused her to fall, and it is crucial in the case. (*See id.* (citing *Managed Care Sols., Inc.*, 736 F. Supp. 2d at 1322)). Plaintiff also argues

that sanctions are warranted because Defendant destroyed the evidence in bad faith. (*See id.* 6–8).

As noted, neither party disputes that the debris previously existed. (Resp. 5 (citations omitted)). Further, Plaintiff demonstrates that Defendant had a duty to preserve the debris and the debris is — or rather, would have been — crucial to her case. *See Managed Care Sols., Inc.*, 736 F. Supp. 2d at 1322. Nevertheless, no sanctions are warranted because Plaintiff has not shown the loss of the debris was "predicated on bad faith." *Mann*, 588 F.3d at 1310 (citation and quotation marks omitted). The Court addresses each issue in turn.

To start, Plaintiff has minimally established that Defendant had a duty to preserve the debris. Parties have "an obligation to retain relevant [evidence] where litigation is reasonably anticipated." *Managed Care Sols., Inc.*, 736 F. Supp. 2d at 1324 (alteration added; citations omitted). Arguably, Defendant had a duty to preserve the evidence as soon as it became aware the debris' presence on the floor was likely the cause of an incident at the store. *See Siciliano v. Target Corp.*, No. 9:14-cv-80459, 2015 WL 11348279, at *4 (S.D. Fla. Apr. 24, 2015) (noting that "litigation was reasonably anticipated as early as [the date] when Plaintiff reported her fall to Target store employees" (alteration added)).

Defendant claims that "[t]he mere occurrence of an incident is not sufficient to immediately place Defendant aware [sic] of an anticipated litigation." (Resp. 5 (alteration added)). This is difficult to reconcile with Defendant's own policies — which Ramos herself described — instructing employees to leave accident scenes undisturbed as well as collect and preserve all items involved in any incident. (*See* Ramos Dep. 20:17–22:24). Numerous employees were aware that the incident occurred, and the debris, at minimum, had some involvement in the incident. (*See, e.g.*, Footage 5:27:37–5:28:15; Ramos Dep. 43:7–44:21 (acknowledging Baker and another employee were on the scene)).

Plaintiff also establishes that the debris is crucial to her case, because "it is the very condition that caused Plaintiff's fall and subsequent injuries." (Mot. 6). Defendant argues that "Plaintiff has not shown that the piece of plastic is crucial" because "[e]vidence can be relevant to a dispute without being crucial to the claim or defenses." (Resp. 5 (alteration added; citing *Floeter v. City of Orlando*, No. 6:05-cv-400, 2007 WL 486633, at *6 (M.D. Fla. Feb. 9, 2007))). Admittedly, evidence must be more than just "relevant" to be considered crucial. *Managed Care Sols., Inc.*, 736 F. Supp. 2d at 1327. But courts "must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of the evidence." *In re Bos. Boat III, L.L.C.*, 310 F.R.D. 510, 521 (S.D. Fla. 2015) (citations and quotation marks omitted). Here, it strains credulity to argue that the debris which Plaintiff maintains was responsible for her fall is not critical to her case — its composition, texture, appearance, and likely source. (*See* Compl. ¶¶ 9–11 (alleging negligence against Defendant based on the "hazardous and dangerous condition")).

Defendant seeks to undercut this unremarkable conclusion by arguing that the debris would only "be cumulative[,]" and the dangerous condition allegedly causing Plaintiff's fall can be proved by otherwise available evidence — such as deposition testimony and the store's camera footage. (Resp. 5–6 (alteration added; discussing *Floeter*, 2007 WL 486633)). For one thing, Defendant's reliance on *Floeter* is inapposite. The plaintiff in *Floeter* accused the defendant of deleting certain emails containing statements which would have supported the plaintiff's hostile-work-environment claims. *See* 2007 WL 486633, at *1–2. While the court in *Floeter* agreed those emails "may be relevant[,]" it determined they were not "crucial" because the plaintiff already had access to numerous other emails containing similar statements. *Id.* at *6 (alteration added). There is no other debris present here which Plaintiff might be able to rely on to prove her claim.

Regardless, the Court does not agree with Defendant that the debris would be cumulative of other evidence in the record, because nothing in the record conclusively establishes what the debris was. The Footage is indeterminate at best. (*See* Footage 5:25:10–5:27:38). Deposition testimony is similarly inconclusive, with witnesses alternatively describing the debris as, among other things: "a tape or something" (Lee Dep. 11:6–10), "the object" (Randall Dep. 8:10–16), "plastic" (Ramos Dep. 28:10–21), and "clear crumpled plastic wrap" (Mot., Ex. 4, Maylor Dep. [ECF No. 31-4] 45:23-46:2). Certainly, it would not be "cumulative" to have evidence on hand which would definitively establish the character of the actual condition which Plaintiff states caused her fall. (*See* Compl. ¶¶ 9–11). Indeed, determining the character of the debris — for example, how visible it might appear while on the floor — is crucial proof for Plaintiff's claims (*see id.*), and certain of Defendant's defenses, such as comparative negligence (*see* Index of State Court Docket Entries, Ex. 12, Answer [ECF No. 1-12] 3).

In short: "[w]hile [Defendant] is correct that the [debris] is not the only evidence that could corroborate or refute [Plaintiff's] allegations, it undoubtedly is one of the main pieces of evidence that could be used to help resolve the underlying matters in this [negligence] case." *Penick*, 481 F. Supp. 3d at 1293 (alterations added). Thus, the Court agrees with Plaintiff that the debris is crucial.

Nevertheless, and again, evidence spoliation is only sanctionable when loss of the evidence is "predicated on bad faith." *Mann*, 588 F.3d at 1310 (citation and quotation marks omitted); *see Bos. Boat III, L.L.C.*, 310 F.R.D. at 516 (noting that "even grossly negligent conduct would not justify [sanctions] when it is not accompanied by bad faith" (alteration added; citation and footnote call number omitted)). Plaintiff argues that both "clearly sufficient direct evidence" and "circumstantial evidence" exist to demonstrate Defendant's bad faith. (Mot. 7). The Court is not

persuaded.

First, Plaintiff's confident assertion of "clearly sufficient direct evidence" is untethered from the record and any supporting authority. (*Id.*). Plaintiff fails to identify any of the direct evidence she believes exists to support this claim, instead relying on a general reference to "the evidence in this case[.]" (*Id.* 6–7 (alteration added)). The Court is left to wonder what evidence she is referring to.

Perhaps recognizing this deficiency, Plaintiff quickly pivots to an attempt to prove bad faith with circumstantial evidence. (*See id.* 7–8). The first three prongs of the circumstantial bad faith analysis largely follow the three elements of proving spoliation, and so the Court does not repeat them here. *See, e.g.*, *Penick*, 481 F. Supp. 3d at 1293 (finding spoliation and then proceeding to the final element of the circumstantial test). For the last prong, Plaintiff must demonstrate that "the affirmative act causing the loss cannot be credibly explained as not involving bad faith[.]" *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-Civ, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009) (alteration added). She fails to do so, because Baker's disposal of the debris can be credibly explained without inferring any nefarious purpose.

To her credit, Plaintiff admits that no party has been able to speak with Baker "to discuss why he did what he did." (Mot. 8). Instead, Plaintiff points to the crowd shown in the Footage and the yelling customers described by the witnesses. (*See id.*). According to Plaintiff, this evidence demonstrates that Baker had knowledge the debris was involved in the incident, yet removed and destroyed it anyway — in fact, Plaintiff insists "[t]here is simply no logical reason" for Baker's actions otherwise. (*Id.* (alteration added)).

Plaintiff's hyperbole aside, the record provides other credible reasons for Baker's conduct. For example, Ramos herself testified regarding the "rough" character of the store's usual

8

customers (Ramos Dep. 59:20–60:1), and Lee confirms he attempted to follow and harangue Baker as he walked away (*see* Lee Dep. 15:14–16:12). As Ramos noted, it would certainly be sensible for Baker to attempt to extricate himself from a situation involving angry, shouting customers. (*See* Ramos Dep. 59:20–60:1). This innocuous conduct would not rise to the level of the bad faith required for a finding of spoilation. *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005) (finding bad faith when company ignored "unambiguous" written request to inspect defective vehicle and instead "allowed the vehicle to be sold for salvage without notification"). Also, there is a credible explanation for why Baker promptly left the scene and the store: he clocked out after working a nine-hour shift. (*See* Timesheets 2).

Nor does the fact that Baker ultimately disposed of the evidence — despite Defendant's evidentiary preservation policies — demonstrate the requisite bad faith. While Ramos described these policies (*see* Ramos Dep. 20:17–22:24), there is no evidence that Baker was even aware of the policies and actively chose to violate them (*see generally* Mot.). Too, there is no evidence he did so with the hope of complicating future litigation. *See Penick*, 481 F. Supp. 3d at 1294 (finding bad faith existed because the spoliator "voluntarily and personally took [the lost evidence] to a scrap yard after he had retained counsel and anticipated filing suit" (alteration added)); *see also Bos. Boat III, L.L.C.*, 310 F.R.D. at 522.

At most, one might describe Baker's failure to preserve the debris as "an act of mere negligence." *Tesoriero*, 965 F.3d at 1185. Bad faith does not exist when "some of Defendant's employees . . . [are] negligent in their preservation efforts." *Butterworth v. Lab'y Corp. of Am. Holdings*, No. 08-cv-411, 2012 WL 12864185, at *23 (M.D. Fla. Apr. 23, 2012) (alterations added), *aff'd*, No. 08-cv-411, 2012 WL 12898848 (M.D. Fla. Aug. 27, 2012). Consequently, the Court finds no sanctions are warranted here.

9

CASE NO. 22-22782-CIV-ALTONAGA/Torres

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Spoliation Sanctions **[ECF No. 31]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 16th day of July, 2023.

*[signature]*
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record